The **LUNDY PACKING COMPANY**, Plaintiff,

v.

**UNITED STATES of America**, Defendant.

Civ. No. 834.

United States District Court E. D. North Carolina, Fayetteville Division.

April 28, 1969.

N. A. Townsend, Jr., J. Roger Edwards, Jr., of Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N. C., for plaintiff.

Robert H. Cowen, U. S. Atty., Raleigh, N. C., G. Thaddeus Williams, Myron C. Baum, Attys., U. S. Dept. of Justice, Washington, D. C., for defendant.

OPINION and ORDER

LARKINS, District Judge:

SUMMARY

This cause comes before the Court as a suit for the recovery of income tax and interest allegedly overpaid by plaintiff for the taxable year ending November 3, 1963, in the amount of $13,333.89 plus statutory interest from the date of payment. The question presented by the action is whether amounts accrued by plaintiff to employee accounts under a sick pay plan instituted by plaintiff on November 1, 1962, are ordinary and necessary business expenses deductible when accrued under Section 162(a) of the Internal Revenue Code of 1954 or whether the plan is a deferred compen-

sation plan within the meaning of Section 404(a) of the Code, in which case the amounts accrued under the plan in question would not be deductible until they are actually paid to the employees. Jurisdiction in this Court is based on Title 28, U.S.C.A. Section 1346(a) (1).

## FINDINGS OF FACT

The facts in the present case, for the most part, have been stipulated by the parties and are not really in dispute. Plaintiff is a North Carolina corporation with its principal place of business in Clinton, Sampson County, North Carolina and files its federal income tax returns with the District Director of Internal Revenue for the District of North Carolina for a taxable year ending on the Saturday nearest to October 31st of each year.

During the taxable year 1963, the plaintiff kept its books and filed its federal income tax returns on the accrual basis of accounting. Effective November 1, 1962, plaintiff adopted a Sick Pay Plan for the benefit of its employees, the terms of which were as follows:

"At the end of each year there is to be accrued to the account of each employee, except those employees who are officers of the corporation, the amount of one week's average salary for the year. If the employee is out of work due to sickness, there will be paid to him out of the amount accrued to him in his Sick Pay Accrued account, each week after the first week of illness, an amount equivalent to his average weekly salary for the previous fiscal year. If an employee leaves the employment of the corporation the amount accrued to him in his Sick Pay Accrued account is paid to him at the end of six (6) months following his termination of employment with the corporation. The term 'termination of employment' includes retirement or death. Each employee of the corporation shall be covered by the The Lundy Packing Company Sick Pay Plan after he has been employed by the corporation for two (2) complete fiscal years, and each service shall be automatically covered by the Plan. Once an employee becomes covered by the Plan, the funds accrued to him in his Sick Pay Accrued account shall become an absolute liability of the corporation and must be paid to the employee (or his estate), either during periods when he is unable to work because of illness, or after he has terminated his employment with the corporation."

Prior to the adoption of the sick pay plan, officers of plaintiff determined on an *ad hoc* basis whether sickness benefits should be paid to employees. The plan instituted on November 1, 1962, was purportedly established to avoid the inconsistent results and the difficulties in administration which prevailed under the old system.

Upon examination of plaintiff's federal income tax return for its taxable year ending November 3, 1963, the Commissioner of Internal Revenue determined that the amounts accrued to the employees' sick pay accrued accounts were not deductible under the Code except to the extent that such accruals were actually paid to the employees. Based upon the determination, the Commissioner disallowed the sum of $22,-754.80 which had been deducted by plaintiff for amounts accrued to sick pay accounts during 1963 and asserted a deficiency in income tax was due in the amount of $11,832.50. Plaintiff paid said deficiency plus interest in the amount of $1,757.63 on April 5, 1966, and filed a claim for refund on January 6, 1967. Plaintiff was notified on July 18, 1967, that the Commissioner had disallowed the claim in full. The plaintiff then filed its action in this Court to recover the amounts paid because of the assessed deficiency.

The total number of employees of the company, the number eligible for bene-

fits under the sick pay plan, and the number ineligible for such benefits at the end of the company's fiscal years 1963 through 1967 were as follows:

| Fiscal Year | 1963 | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|---|
| Employees | | | | | |
| Eligible | 153 | 161 | 162 | 181 | 202 |
| Ineligible | 66 | 86 | 113 | 96 | 121 |
| Total | 219 | 247 | 275 | 277 | 323 |

The total amount accrued and the total amount paid out to eligible employees under the sick pay plan for each of the company's fiscal years 1963 through 1967 were as follows:

| Fiscal Year | 1963 | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|---|
| Beginning Balance | 0 | $22,754.80 | $36,649.51 | $49,364.96 | $59,737.20 |
| Paid to Employees | $ 1,267.78 | 1,272.59 | 3,791.47 | 8,436.01 | 6,764.01 |
| Accrued in Year | 24,022.58 | 15,167.30 | 16,506.92 | 18,808.25 | 24,199.61 |
| Amount Forward | $22,754.80 | $36,649.51 | $49,364.96 | $59,737.20 | $77,172.80 |

———◆———

Between November 1, 1962, and November 1, 1967, plaintiff paid out a total of $21,531.98 to its eligible employees under the plan. Of this total, the amount of $10,636.70 was paid in the form of benefits for employees who were absent from work because of illness; and the amount of $10,895.28 was paid to employees on dates six months after the termination of their employment.

A separate sick leave record card is maintained for each eligible employee of the company. At the end of each fiscal year, when the company makes its accrual to eligible employees under the Sick Pay Plan, the amount accrued for each eligible employee is posted to his or her card. Thereafter when the employee is absent from work because of illness, payments are made pursuant to the terms of the Sick Pay Plan and the amounts so paid are posted to the sick leave record card. In the event of the termination of the employment of an eligible employee, the unused balance on his or her sick leave record card is paid to such employee pursuant to the terms of the Sick Pay Plan.

The amounts so accrued are not maintained in a separate fund but are a part of the general cash account of the company. The company's cash balance at the end of each of its fiscal years 1962 through 1967 were as follows:

| | |
|---|---|
| 1962 | $  363,038.91 |
| 1963 | 565,772.95 |
| 1964 | 597,631.50 |
| 1965 | 533,754.09 |
| 1966 | 768,042.30 |
| 1967 | 1,678,072.30 |

At least fifty percent of the company's cash balance is retained in certificates of deposit. The company receives all interest income from such certificates of deposit. The employees under the plan earn no interest on amounts in their sick pay accounts.

The amounts accrued to the participating employees are not included on their employee withholding statements in the year of accrual. Amounts actually paid to participating employees pursuant to the provisions of the plan are included as income on their W–2 Forms in the year payment is made.

During the fiscal years 1963 through 1967, and for several years prior thereto, the company had in effect a qualified profit-sharing plan for its employees. The company also has in effect a group hospitalization insurance plan for the benefit of its employees.

## CONCLUSIONS OF LAW

The issue before the Court is whether plaintiff's deductions for accruals to its employee sick pay accounts are allowable under the Internal Revenue Code. Defendant is not contesting the deductibility of amounts actually paid out under plaintiff's plan, but contends only that the unpaid accrued amounts which remain in plaintiff's general operating funds are not deductible. Plaintiff asserts that the accrued amounts are deductible under Section 162(a) as ordinary and necessary business expenses and relies on Treasury Regulation 1.162–10(a) which provides in pertinent part:

"Amounts paid or accrued within the taxable year for dismissal wages, unemployment benefits, guaranteed annual wages, vacations, or a sickness, accident, hospitalization, medical expense, recreational, welfare, or similar benefit plans, are deductible under 162(a) if they are ordinary and necessary expenses of the trade or business. However, * * * such amounts shall not be deductible under section 162(a) if, under any circumstances, they may be used to provide benefits under a stock bonus, pension, annuity, profit-sharing, or other deferred compensation plan of the type referred to in section 404(a). In such an event, the extent to which these amounts are deductible from gross income shall be governed by the provisions of section 404 and the regulations issued thereunder." 26 C.F.R., Sec. 1.162–10.

Plaintiff alleges that its plan is a sickness benefits plan and therefore should be controlled by section 162(a).

Defendant contends that even if the accruals are ordinary and necessary business expenses, the sick pay plan is actually a deferred compensation plan controlled by section 404 of the Code, specifically section 404(a) (5) which permits deductions under such plans only when the amounts are actually paid by the employer and not when they are merely accrued. Section 404 deals with deductions for employer contributions to an employees' trust or annuity plan and compensation under deferred-payment plans. It provides in substance that the deduction shall not be allowed under section 162, but if it satisfies the conditions of section 162 it shall be deductible under section 404, subject, however, to certain limitations, one of which governs the year when the deduction may be taken. In the case of contributions by accrual basis taxpayers to (1) pension trusts, (2) employees' annuities, or (3) stock-bonus and pension-sharing trusts, section 404(a) (6) permits the deduction in the year of accrual only if payment is in fact made not later than the time prescribed by law for filing the return during the following year. In the case of payment of compensation under a deferred-payment plan, however, the statute does not permit even such limited deviation. Section 404(a) (5), which governs such payments, allows the deduction only in the taxable year when paid. Therefore, if the sick pay accruals here in controversy are within the coverage of section 404 as "deferred compensation," it follows that the contested deductions must be disallowed since the amount here in question was not paid out during 1963.

After an examination of the way in which plaintiff's plan was conceived and established and the way in which it has actually operated, this Court is of the opinion that the plan is more than

one which provides solely for benefits to plaintiff's employees in case of sickness and therefore must be classified as a deferred compensation plan within the meaning of section 404. According to the testimony of plaintiff's president, Bowers T. Lundy, plaintiff, in adopting its plan, did not make any study as to how many hours or weeks the company was losing because of employee sickness (Tr. 20), and there is no indication either that the amounts accrued were based on anticipated sick pay requirements or that the amounts accrued in most cases will ever be needed for sick pay. In fact, plaintiff's experience under the plan between 1963 and 1967 shows that plaintiff accrued to its employee sick pay accounts a total of $77,172.80 over the five-year period and paid out only $21,531.78. Of the amount paid out, only $10,636.70 or less than half was paid in the form of sick pay benefits, the remainder being paid to employees six months after the termination of their employment. Despite contentions of plaintiff that the difference between the amounts accrued and the amounts paid out will decrease as the plan progresses, the figures indicate that there was actually a decline in the amounts paid to employees between 1966 and 1967. The fact that some of the benefits are paid to employees during periods of sickness does not prevent the plan from being one which does assure all employees additional compensation and defers the payment of that compensation until a later date.

Another factor which militates against the acceptability of plaintiff's plan is that the amounts accrued to the sick pay accounts have not been set aside in a separate fund or trust account. Plaintiff through a bookkeeping entry has merely designated part of its general operating funds as amounts which will be paid to its employees upon sickness or termination of employment. Interest drawn on that portion of the accruals which are invested in certificates of deposit goes back to plaintiff and does not accrue to the benefit of the employees. Although the total amount on hand at the present time is sufficient to cover any immediately foreseeable obligation that plaintiff may have under the plan, there is no assurance that plaintiff's presently strong financial posture will continue. If plaintiff should meet with financial setbacks in the future, there is no guarantee that the employees will receive their benefits under the sick pay plan either in the event of sickness or at the termination of employment. The employees are relegated to the position of general creditors and are not so secure as they would be if plaintiff had deposited the accrued amounts in a separate trust account. The failure to deposit the funds in a separate account, when added to the fact that there may be a considerable lapse of time between accrual and actual payment, tends to weaken plaintiff's contention that the amounts should be deducted when accrued. The longer the lapse between the time the amounts are accrued and the time they are paid out, the greater will be the likelihood that the employees' benefits would be forfeited because of possible future financial adversities of plaintiff and that the plaintiff would receive an undeserved benefit by not being able to pay out amounts which it had already deducted on prior tax returns.

Another consideration which leads this Court to classify plaintiff's plan as a "deferred compensation" plan is that the plan assures a benefit to all employees regardless of sickness. This factor is recognized in the Treasury Regulations promulgated by the Commissioner as one basis for distinguishing between those plans which fall under section 404 of the Code and those in which deductions are permitted under section 162(a). Treasury Regulation section 1.404(a)–1(a) provides in pertinent part that:

"* * * (2) Section 404(a) does not apply to a plan which does not defer the receipt of compensation. Furthermore, section 404(a) does not apply to deductions for contributions under a plan which is solely a dismissal wage

or unemployment benefit plan, or a sickness, accident, hospitalization, medical expense, recreation, welfare, or similar benefit plan, or a combination thereof. For example, if under a plan an employer contributes 5 percent of each employee's compensation per month to a fund out of which employees who are laid off will be paid benefits for temporary periods, but employees who are not laid off have no rights to the funds, such a plan is an unemployment benefit plan, and the deductibility of the contributions to it is determined under section 162. As to the deductibility of such contributions, see § 1.162–9.[1]

"(3) If, however, the contributions to a pension, profit-sharing, stock bonus or other plan of deferred compensation can be used to provide any of the benefits referred to in subparagraph (2) of this paragraph, then, except as provided in section 404(c), section 404(a) applies to the entire contribution to the plan. Thus, if in the example described in subparagraph (2) of this paragraph, the employer's contribution on behalf of each employee is set up as a separate account, and if any amount which remains in an employee's account at the time of retirement is paid to him at such time, the deductibility of the contributions to the plan is determined under section 404(a)  *  *  *."

The distinction made in the above regulation between plans which do and plans which do not assure some benefit to every employee was the basis for a recent decision in the Tax Court in which the Court considered the statute and regulations here in question and rejected an argument based on Regulation 1.162–10(a). New York Seven-Up Bottling Co. v. Commissioner, 50 T.C. 391 (1968). In 1956, the Seven-Up Bottling Company entered into a collective bargaining agreement which contained a severance pay provision. In 1959, Seven-Up agreed to contribute to the union's retirement fund in lieu of future severance pay benefits. Severance pay benefits accumulated under the 1956 agreement were frozen and made irrevocably payable to qualified employees on their discharge or resignation or to their beneficiaries in the event of their death. Between 1956 and 1959, Seven-Up deducted severance pay only when actually paid. However, when the unpaid severance pay liability became frozen by the 1959 agreement, Seven-Up accrued and deducted on its 1959 return $37,000 for unpaid severance pay liability in the future. No part of this $37,000 severance pay was paid out to a fund, placed in a trust or otherwise segregated from general business funds. The Treasury disallowed the accrued deduction under the deferred compensation rule.

The Tax Court held that the Treasury Regulations do exclude from the deferred compensation rule any plan which is *solely* a dismissal wage or unemployment plan but that the exception does not apply if employees who are not laid off are assured of some benefit under the plan. Because Seven-Up's severance pay provision assured each employee a week's pay for each year of service up to the cut-off point even though he resigned or died instead of being laid off, the court held that the severance pay provision was a plan for deferring compensation and therefore the benefits were not deductible until they were actually paid.

The plan in the present case is similar to the severance pay plan in the *Seven-Up* case in that funds accumulated on the basis of one week's compensation per year are payable upon termination of employment. The fact that the plan is labeled a sick pay plan and that some of the amounts accrued are paid out for sickness does not offset the existence of a substantial amount of compensation which does not relate to sick pay bene-

---

1. This is apparently a typographical error since the regulation relating to the deductibility of unemployment plans under section 162 of the Code is section 1.162–10 of the Treasury Regulations.

fits and which is deferred until termination of employment. Although this Court is not willing to go so far as to say that the assurance of some benefit to each employee automatically classifies a plan as a deferred compensation plan, this factor, when considered along with the way plaintiff's plan was established and the way it has actually operated, is persuasive to the Court that plaintiff should not be permitted a deduction for amounts accrued to its employees' sick pay accounts until the year in which those amounts are actually paid.

Plaintiff is to be commended for establishing a plan which provides as much in the way of additional benefits for its employees as this plan provides. However for the reasons stated above and after consideration of the applicable statutes and regulations, this Court is of the opinion that the amounts accrued under the sick plan are not properly deductible at the time of accrual. Therefore, the Court concludes that the plaintiff is entitled to no recovery.