HARRY A. WELLONS, JR., MD. S.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wellons v. Commissioner
Docket Nos. 633-88, 5483-89
United States Tax Court
T.C. Memo 1992-704; 1992 Tax Ct. Memo LEXIS 746; 64 T.C.M. (CCH) 1498; 16 Employee Benefits Cas. (BNA) 1305; December 14, 1992, Filed *746 Decision will be entered under Rule 155. For Petitioner: David J. Duez. For Respondent: David Albert Mustone. FAY
FAY
MEMORANDUM OPINION FAY, Judge: By separate notices of deficiency, respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: Additions to Tax
Year
Sec.
Sec.
Sec.
Ended
Deficiency
6653(a)(1)
6653(a)(2)
6661(a)
June 30, 1984
$ 194,584
$ 9,729
[1]
$ 48,646
June 30, 1985
216,272
--
--
36,474
June 30, 1986
46,949
--
--
--
All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions, the sole issue remaining for this Court to decide is whether petitioner's contributions to an employee benefit plan are deductible under section 162(a) or governed by section 404(a)(5). For the reasons explained below, we find that *747 petitioner's plan is a plan of deferred compensation within the meaning of section 404(a), thus subject to the timing restrictions imposed on deductions arising from employer contributions contained in section 404(a)(5). The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner's principal place of business at the time of the filing of the petition was Springfield, Illinois. Background
Petitioner, Harry A. Wellons, Jr., M.D., S.C., is a corporation organized on July 1, 1982, under the laws of the State of Illinois. Petitioner's business function consists of providing medical services to the public, specifically in the areas of thoracic and cardiovascular surgery. During the years at issue, Harry A. Wellons, Jr. (Dr. Wellons), a cardiovascular surgeon, was the sole shareholder and president of petitioner. Petitioner's taxable year is a fiscal year ending on June 30. Petitioner employs the cash receipts and disbursements method of accounting. Effective July 1, 1983, petitioner adopted the Harry A. Wellons, Jr., M.D., S.C. Employee Benefit Plan and Trust Agreement (the plan). The plan year is a fiscal year ending June 30. *748 The plan, essentially, purports to provide severance benefits to participating employees upon termination of employment with petitioner. [1]
The Plan
Benefits
Section 3.1 of the plan provides, in part, that each participant is entitled to a severance benefit at termination of employment with petitioner, determined as follows: Twenty-one weeks of average weekly compensation for each year of service with the employer over five [years]. Section 3.2 of the plan, however, limits the maximum severance benefit each participant can receive to "twice the Member's Annual Compensation during the year immediately *749 preceding the termination". Article I of the plan provides the following definitions related to the provision of benefits: Compensation. The total of all amounts paid, accrued or incurred by the Employer during any Plan Year to or for the benefit of an employee for service rendered or labor performed, including but not limited to all salary, wage, bonus, incentive earnings and overtime payments, excluding only fringe benefits and contributions made under this Plan and any other employee benefit, welfare or deferred compensation plan in which the contributions thereto are not includible in the gross income of the employee for the taxable year in which contributed. * * * Average Weekly Compensation. Average Weekly Compensation means the weekly average of the aggregate compensation received by the Member during any two (2) consecutive years, or the number of years employed by Employer, if less, in which said average weekly compensation was the highest. * * * Year of Service. A consecutive twelve month computation period commencing on the date of employment and ending on each succeeding anniversary of that date. Participation
Section 2.1 of the plan provides, *750 in part, that every full-time employee of the employer is eligible to participate in the plan. At the beginning of the plan years ending June 30, 1984, and June 30, 1985, the plan had two participants, namely, Dr. Wellons and his wife, Florence L. Wellons. As of the end of the 1985 plan year, the plan had added two additional participants. The following table contains a summary of all the employees of petitioner and their respective salaries for the fiscal years ending June 30, 1984 and 1985. Date of
1984
Employment
Salary
Harry A. Wellons, Jr.
7/ 1/82
$ 1,109,148.94
Florence L. Wellons
7/ 1/82
3,637.86
Debbie Gardner
3/30/84
5,262.32
Jamie L. Ealey
6/25/84
-0-   Date of
1985
Employment
Salary
Harry A. Wellons, Jr.
7/ 1/82
$ 1,180,000.00
Florence L. Wellons
7/ 1/82
4,053.69
Debbie Gardner
3/30/84
15,082.26
Jamie L. Ealey
6/25/84
12,882.50
Joel A. Schneider
10/ 1/84
99,000.00
During the years at issue, no employees terminated their employment with petitioner with accrued benefits. Therefore, no benefit payments were made under the plan to any participant during any of the taxable years before us. Contributions
*751 Article IV of the plan provides that petitioner "shall from time to time, make contributions to the Trust for each Plan Year in an amount sufficient to provide the benefits expected to become payable under this Trust." Although the plan allowed for employee contributions, we find no evidence in the record of any employee contributions to the plan for the years before us. Petitioner contributed $ 194,000 to the plan for each of the taxable years ending June 30, 1984, and June 30, 1985, by payment of these amounts to the trustee of the plan. All contributions made to the plan by petitioner were made from the profits of the corporation. The amounts contributed by petitioner to the plan were determined by consulting actuaries retained by petitioner to determine the funding necessary to provide the benefits offered by the plan. Petitioner claimed the $ 194,000 payments as Federal income tax deductions for the taxable years ending June 30, 1984, and June 30, 1985, respectively. Forfeiture
Under section 3.5 of the plan, participants could forfeit their accrued severance benefits only upon occurrence of the following: (1) Termination of employment "due to theft, dishonesty, embezzlement, *752 fraud or misappropriation of Employer's property * * *"; or (2) Termination of employment "because of leave of absence or conversion to part-time employment". Trustee
The plan funds were paid to a trustee who was responsible for the safekeeping and administration of the assets of the trust in accordance with the provisions of the plan. The plan was operated in accordance with its terms. Respondent disallowed the entire $ 194,000 claimed by petitioner as a deduction on each of petitioner's 1984 and 1985 Federal income tax returns. Respondent asserts that the plan at issue is one of deferred compensation and, therefore, the deductions arising out of petitioner's contributions to such a plan are governed by section 404(a). [2]
*753 Petitioner contends that the plan at issue is a welfare benefit plan, the contributions to which are currently deductible under section 162. Discussion
The sole issue for decision is whether section 404(a)(5) prohibits petitioner's deduction in the taxable years 1984 and 1985 of the sums of $ 194,000 and $ 194,000, respectively. The parties do not dispute that, if the plan is within the ambit of section 404(a), section 404(a)(5) prohibits the deductions at issue. Thus, the narrow question before us is whether section 404(a) applies to petitioner's plan. Section 404 provides in relevant part: (a) General Rule. -- If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations *754 as to the amounts deductible in any year: * * * (5) Other plans. -- If the plan is not one included in paragraph (1), (2), or (3), in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan, but, in the case of a plan in which more than one employee participates only if separate accounts are maintained for each employee. Section 162 provides in its relevant part: (a) * * * There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * The regulations under section 162 provide some guidance in distinguishing between payments eligible for deduction under section 162 and those whose deductibility is determined under section 404(a). Section 1.162-10(a), Income Tax Regs., first promulgated in 1958 and still in effect, provides: § 1.162-10. Certain employee benefits. (a) In general. Amounts paid or accrued by a taxpayer on account of injuries received by employees and lump-sum amounts paid or accrued as compensation for injuries are proper deductions as ordinary and necessary expenses. *755 Such deductions are limited to the amount not compensated for by insurance or otherwise. Amounts paid or accrued within the taxable year for dismissal wages, unemployment benefits, guaranteed annual wages, vacations, or a sickness, accident, hospitalization, medical expense, recreational, welfare, or similar benefit plan, are deductible under section 162(a) if they are ordinary and necessary expenses of the trade or business. However, except as provided in paragraph (b) of this section, such amounts shall not be deductible under section 162(a) if, under any circumstances, they may be used to provide benefits under a stock bonus, pension, annuity, profit-sharing, or other deferred compensation plan of the type referred to in section 404(a). In such an event, the extent to which these amounts are deductible from gross income shall be governed by the provisions of section 404 and the regulations issued thereunder. At the outset, we note that the rules governing the timing of an employer's deduction for contributions paid or accrued to a welfare benefit fund were changed with the enactment of sections 419 and 419A by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 511, 98 *756 Stat. 494, 854. The new provisions, however, are not effective for the years before us. [3]
In New York Post Corp. v. Commissioner, 40 T.C. 882 (1963), *757 we held that payments made pursuant to a union contract to employees upon voluntary termination of employment after becoming 65 years of age or completing 25 years of service were subject to section 404(a). This Court reasoned that the payments there in issue, being in the nature of retirement benefits, were the type of deferred compensation that Congress had in mind when it provided that such compensation would not be deductible under section 162 but rather would be deductible under section 404. Similarly, in Grant-Jacoby, Inc. v. Commissioner, 73 T.C. 700, 715 (1980), we held that an educational benefit plan for children of employees was governed by section 404(a) rather than by section 162 in that such plan had characteristics of a profit-sharing plan. In New York Seven-Up Bottling Co. v. Commissioner, 50 T.C. 391 (1968), [4] we held that section 404(a) precluded an employer from deducting unpaid severance pay liability incurred pursuant to a union contract. The union contract provided that, after 5 years of service, any employee whose employment was terminated would be entitled to 1 week of pay for each year of service. *758 Therefore, "the plan in New York Seven-Up was similar to a pension plan in that the right to receive benefits vested after a certain term of employment, the extent of benefits was related to years of service, and the receipt of benefits by the employee would not begin until after termination of his employment." Latrobe Steel Co. v. Commissioner, 62 T.C. 456, 467 (1974) (Court reviewed); Springfield Productions, Inc. v. Commissioner, T.C. Memo. 1979-23. *759 Petitioner's plan provides that: (1) Participants only begin to accrue benefits after 5 years of service (at which time they become fully vested in the benefits accrued); (2) the amount of benefits is directly linked to the employee's weekly salary and increases with each additional year of service; and (3) benefits commence upon termination of employment. [5] We find these provisions to be characteristics of a pension plan which defers receipt of compensation within the meaning of section 404(a)(5). A pension plan is generally defined as a plan: established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years * * * after retirement. Retirement benefits generally are measured by, and based *760 on, such factors as years of service and compensation received by the employees. * * * Sec. 1.401-1(b)(1)(i), Income Tax Regs.; cf. Greensboro Pathology Associates v. United States, 698 F.2d 1196, 1200-1201 (Fed. Cir. 1982). Here, the benefits accrued to participants on the basis of years of service, and the final amount of benefit payable was dependent on the number of years the participants performed services. The plan itself calculates the benefits to be paid based on each participant's compensation and, finally, the receipt of benefits by a participant would not begin until after termination. As with all deductions, petitioner bears the burden of establishing that it is entitled to the deductions claimed on the return. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Based on the record before us, we cannot conclude that the plan, in substance, was not "under any circumstances * * * used to provide benefits under a stock bonus, pension, annuity, profit-sharing, or other deferred compensation plan of the type referred to in section 404(a)." Sec. 1.162-10(a), Income Tax Regs.
In light *761 of these factors, we hold that deductions arising from contributions to the plan at issue are governed by section 404(a). [6]
Decisions will be entered under Rule 155. Footnotes
1. Fifty percent of interest due on the deficiency.↩
1. The plan also allows for the provision of other benefits as set out in sec. 501(c)(9) and the regulations promulgated thereunder. We note that petitioner intended the plan to be exempt from tax as a voluntary employees beneficiary association (VEBA), under sec. 501(c)(9). The exempt status of petitioner's plan, however, is not properly before this Court and therefore we express no opinion on this issue.↩
2. Sec. 404(a) delineates an employer's right to deduct contributions to a plan of deferred compensation. Sec. 404(a)(1) through (4) allows the employer to deduct currently the full amount of its contributions to a qualified plan. Sec. 401 lists the requirements of a qualified plan. The parties do not argue that the plan at issue is qualified within the context of sec. 401. If petitioner's plan is found to be one deferring the receipt of compensation, then petitioner's deductions for amounts contributed to the plan will be subject to sec. 404(a)(5) and, thus, postponed in time and limited in amount to benefits includable in the gross income of employees participating in the plan. If, on the other hand, we find petitioner's plan is not one that defers receipt of compensation, then the deductions claimed by petitioner are proper. As to the additional requirements for deductibility under sec. 162, we note that the parties have stipulated to be bound by this Court's opinion in Schneider v. Commissioner, T.C. Memo. 1992-24, solely on the issue of whether petitioner's contributions to the plan are currently deductible ordinary and necessary expenses. In Schneider, this Court held, under the facts of that case, that an employer's contribution to an employee welfare plan was a currently deductible ordinary and necessary business expense within the meaning of sec. 162. We note that the Commissioner in Schneider did not argue that the taxpayer's contributions under the subject plans could be used to provide benefits under a stock bonus, pension, annuity, profit-sharing, or other deferred compensation plan. Thus, if this Court finds that the deductions arising from petitioner's contributions to the plan at issue are subject to sec. 162 and not sec. 404(a)↩, then such deductions will be allowed for the years claimed.
3. The new rules apply to contributions paid or accrued after Dec. 31, 1985, in taxable years of employer's ending after that date. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 511(e)(1), 98 Stat. 862. The contributions made by petitioner under the plan were paid prior to Dec. 31, 1985. In general, sec. 419 and 419A limit the amount which an employer can deduct under sec. 162↩ for contributions to a welfare benefit fund to the fund's "qualified cost" for the taxable year. Sec. 419(b). The "qualified direct cost" of a welfare benefit fund is the aggregate amount which would have been allowable as a deduction, if the employer provided the benefits directly to its employees and used the cash receipts method of accounting. Sec. 419(c)(3)(A). The statute deems a benefit to have been provided when it is "includible in the gross income of the employee". Sec. 419(c)(3)(B).
4. In Latrobe Steel Co. v. Commissioner, 62 T.C. 456 (1974) (Court reviewed), this Court narrowed the application of sec. 404(a) to only those plans of deferred compensation which are similar to pension, profit-sharing, stock bonus, and annuity plans. We observe that, in the Revenue Act of 1978, Pub. L. 95-600, sec. 133(b), 92 Stat. 2783, Congress has apparently changed, for tax years beginning after Dec. 31, 1978, the restrictive interpretation given to sec. 404 in Latrobe Steel v. Commissioner, supra, by striking out "similar plan" and inserting in lieu thereof "other plan". Sec. 404(b), as it pertains to the years before us, provides: (1) * * * If -- (A) there is no plan, but (B) there is a method or arrangement of employer contributions or compensation which has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or other plan deferring the receipt of compensation, (including a plan described in paragraph (2)), subsection (a) shall apply as if there were such a plan.↩
5. The fact that the benefits accrued thereunder are forfeitable in certain limited circumstances does not require a different result. New York Post Corp. v. Commissioner, 40 T.C. 882↩ (1963).
6. In so holding, we need not consider respondent's alternate argument that, because petitioner's sole shareholder and his wife stand to receive most of the benefits under the plan, this Court should apply sec. 404(a) to petitioner's plan. In Citrus Orthopedic Medical Group v. Commissioner, 72 T.C. 461 (1979), we held that, in determining whether the contributions to a plan are currently deductible under sec. 162(a) or deferred under sec. 404(a)(5)↩, it is significant to examine whether the plan benefits employees generally or whether the plan is for the benefit of the owners.